UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD BOYEDE OLAJIDE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL ARSANIS, et al.,<br><br>Defendants. | Case No.  12-cv-04303-WHO<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTIONS TO DISMISS; GRANTING<br>PARTIES' REQUESTS FOR JUDICIAL<br>NOTICE**<br><br>Re: Dkt. Nos. 140, 142, 146, 147, 149, 150 |

*Pro se* plaintiff Ronald Olajide brings this action against the County of Alameda, Alameda County Sheriff's Deputy Valmore Courtney, the City of Oakland, and Oakland police officers Michael Arsanis, Anthony Banks, Jr., and Mark E. Rowley, asserting various violations of his constitutional rights.  First Amended Complaint ("FAC") (Dkt. No. 134).  The defendants have moved to dismiss portions of the FAC.  Oakland Mot. to Dismiss (Dkt. No. 140); Alameda Mot. to Dismiss (Dkt. No. 142).  For the reasons set forth below, the defendants' motions to dismiss are GRANTED.  Mr. Olajide's claims relating to his wrongful arrest and excessive force in his arrest and during his detention at Santa Rita jail are sufficiently stated at this procedural stage and remain in the case.

## BACKGROUND[1]

### A.  Factual background

On April 7, 2012, at 5:00 a.m., Mr. Olajide "was peaceably sitting in his private

---

[1] I assume the truth of Mr. Olajide's allegations at this pleadings stage.

United States District Court<br>Northern District of California

automobile" when Officers Arsanis and Banks "confronted Olajide with loaded handguns in holster." FAC ¶¶ 1-2. Mr. Olajide was not engaged in any unlawful activity immediately prior to or at the time and he "expressed his feeling of compelled action under duress." FAC ¶ 3. Officer Arsanis demanded that Mr. Olajide unlock his car door and exit his vehicle so Officer Arsanis could "seize" Mr. Olajide. FAC ¶ 4. Mr. Olajide "began recording[2] and told defendant Arsanis that he hadn't committed a crime nor was shown a warrant and defendant Arsanis should leave him alone." FAC ¶ 5. When Mr. Olajide refused Officer Arsanis's request to unlock his car door, Officer Arsanis "pulled out his flashlight and . . . . broke Olajide's car window." FAC ¶ 6. Officer Arsanis then "punched Olajide several times in the face . . . pepper sprayed him in the eyes, then pulled Olajide out of his vehicle and excessively beat Olajide's face into the broken glass then continued to punch Olajide in the back of his head." FAC ¶ 7.

Officer Arsanis then "shackled" Mr. Olajide. FAC ¶ 8. Several other Oakland police officers then arrived, including Officer Rowley. FAC ¶¶ 8, 10. Officer Rowley confronted Mr. Olajide "with a loaded handgun and discussed with Olajide what just transpired with defendant Arsanis." FAC ¶ 10. Mr. Olajide asked Officer Rowley "if he had a copy of his appointment from a State of California executive Department Officer to execute any state laws pursuant to the California Constitution." FAC ¶ 11. Officer Rowley was unable to provide the documents that Mr. Olajide requested "and was also unable to provide Olajide with lawful facts to confirm probable cause or a lawful warrant describing Olajide." FAC ¶ 12.

Officer Rowley instructed an unidentified Oakland police officer to take Mr. Olajide to a "dungeon" owned by Alameda. FAC ¶ 14.[3] Before going to the dungeon, unidentified Oakland police officers took Mr. Olajide to Highland Hospital for medical attention. FAC ¶ 15. Mr. Oaljide was then brought to the dungeon. After the Oakland police officers left the dungeon, five unidentified Alameda deputies "carr[ied] Olajide into a small concrete cage where they propped

---

[2] I assume that Mr. Olajide means that he recorded the incident on his mobile phone. *See*, *e.g.*, Dkt. No. 126 (defendants suspended deposition of Mr. Olajide after Mr. Olajide attempted to videotape deposition on his cellphone without prior notice).

[3] Alameda states that the "dungeon" or "cage" referenced by Mr. Olajide is Santa Rita jail. Alameda Mot. to Dismiss 2 n.1. Mr. Olajide does not dispute this assertion.

United States District Court
Northern District of California

Olajide's knees on a concrete bench then banged Olajide's head against the concrete wall."  FAC ¶ 18.  Two of the Alameda deputies held Mr. Olajide by his arms while another deputy "choked Olajide's neck and banged Olajide's head."  FAC ¶ 19.  Two other Alameda deputies "watched the men continue to scream at Olajide 'you better not f___ with us! We will f___ you up Nigger!'"  FAC ¶ 19.

An unidentified Alameda officer then removed Mr. Olajide's shoes, socks, belt, and jacket and emptied his pockets, and left him alone in a cold concrete room.  FAC ¶ 20.  Mr. Olajide was left alone in this room without any food or water.[4]  FAC ¶¶ 23-24.  After at least 10 hours, Deputy Courtney "told Olajide that if he didn't allow the agents of Alameda to take his fingerprints then they would forcedly [sic] injure him and take them from him, just to charge Olajide with 'assault on an officer' to protect defendant Alameda from a lawsuit."  FAC ¶ 24.  Mr. Olajide complied with Deputy Courtney's request under "duress, threat, and coercion."  FAC ¶ 25.

An unidentified Alameda officer required Mr. Olajide to pay a $5,500 "ransom" in exchange for his release.[5]  FAC ¶ 26.  Unidentified Alameda deputies and Deputy Courtney detained Mr. Olajide for an additional 12 hours after he paid the $5,500.  FAC ¶ 26.  Before Mr. Olajide was released, an Alameda deputy "forcedly" took Mr. Olajide's DNA, stating that it was Alameda's policy.  FAC ¶ 27.  Mr. Olajide was released on April 8, 2012 at 12:00 p.m.  FAC ¶ 27.

The FAC alleges that the defendants violated several of Mr. Olajide's constitutional rights, including his rights to be free from kidnapping, cruel and unusual punishment, peonage, and assault.  *See* FAC 10-14.  He further alleges that each of the defendants acted "in concert under color of commercial and state law" (FAC ¶ 32) and that each of the defendants acted willfully and in bad faith, and showed deliberate indifference to Mr. Olajide's rights.  FAC ¶ 36.

Mr. Olajide moves for relief under 14 Stat. 27 and 17 Stat. 13 of the Civil Rights Act of 1866 and 1871.  *See* FAC 1.  I previously explained to Mr. Olajide that the statutes he cites were codified in the United States Code and the Code is the proper vehicle for Mr. Olajide's claims.

---

[4] Mr. Olajide told an Alameda deputy that he did not have any water because the faucet in the cell was broken.  FAC ¶ 23.
[5] I infer that Mr. Olajide is referring to his bail.

United States District Court
Northern District of California

1    *See* Dkt. No. 132 at 2.  The distinction, however, has no bearing on the disposition of this motion.

2    **B. Procedural history**

3         Mr. Olajide filed his Complaint on August 15, 2012.  Dkt. No. 1.  On January 3, 2013, the

4    Court denied Oakland's and Alameda's motions to dismiss, finding that Mr. Olajide pleaded facts

5    sufficient to allege that the conduct of officers employed by Oakland and Alameda "violated his

6    constitutional rights in violation of 42 U.S.C. § 1983[.]"  Dkt. No. 68 at 4-5.  The Court found that

7    Oakland's and Alameda's liability "for these actions may be premised on *Monell v. Department of*

8    *Social Services*, 436 U.S. 658 (1978)."  *Id.*  The Court also found that Mr. Olajide's allegation that

9    the defendants' "conduct was motived by expressed racial animus" was sufficient to state a claim

10   under 42 U.S.C. Section 1985.  *Id.*  Mr. Olajide filed his first amended complaint on December 16,

11   2013.  Dkt. No. 134.  Mr. Olajide requests declaratory relief, immunity, injunctive relief,

12   compensatory damages, punitive damages, and costs.  FAC at 16.

13                                  **LEGAL STANDARD**

14        Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

15   if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

16   dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

17   face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A claim is facially plausible when

18   the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant

19   is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

20   omitted).  This standard is not akin to a probability requirement, but there must be "more than a

21   sheer possibility that a defendant has acted unlawfully." *Id.*  While courts do not require

22   "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to

23   relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

24        In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

25   court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

26   plaintiff. *See Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not

27   required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact,

28   or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

United States District Court
Northern District of California

1    *Pro se* complaints are held to "less stringent standards than formal pleadings drafted by

2    lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Where a plaintiff is proceeding *pro se*, the

3    Court has an obligation to construe the pleadings liberally and to afford the plaintiff the benefit of

4    any doubt. *See Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However,

5    *pro se* pleadings must still allege facts sufficient to allow a reviewing court to determine whether a

6    claim has been stated. *See Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.

7    1982).

8                                              **DISCUSSION**

9    **I.  REMEDIES FOR CONSTITUTIONAL VIOLATIONS**

10         42 U.S.C. Section 1983 provides a remedy for constitutional violations by persons acting

11   under the color of state law. It provides, in relevant part:

12              Every person who, under color of any statute, ordinance, regulation,
               custom, or usage, of any State . . . . subjects, or causes to be
13              subjected, any citizen of the United States . . . . to the deprivation of
               any rights, privileges, or immunities secured by the Constitution and
14              laws, shall be liable to the party injured in an action at law, suit in
               equity, or other proper proceeding for redress.
15

16   Section 1983 "is not itself a source of substantive rights, but merely provides a method for

17   vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)

18   (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)) (internal quotation marks omitted).

19         Section 1983 only affords relief where a person acting under color of state law actually or

20   proximately causes a violation of a "clearly established" protected right. *See Pearson v. Callahan*,

21   555 U.S. 223, 231 (2009). Therefore, even if an individual defendant actually or proximately

22   deprived a plaintiff of a protected right, the plaintiff must establish that this right was "clearly

23   established," such that a reasonable official would know his or her conduct violated a protected

24   right. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

25         42 U.S.C. Section 1985(3) provides a cause of action against officials that conspire to

26   deprive a person of persons of equal protection of the laws. To state a claim for a violation of

27   Section 1985(3), a plaintiff must allege four elements: "(1) a conspiracy; (2) for the purpose of

28   depriving, either directly or indirectly, any person or class of persons of the equal protection of the

United States District Court
Northern District of California

laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citing *United Bhd. of Carpenters and Joiners of Am. v. Scott*, 463 U.S. 825, 828-29 (1983)). A plaintiff can satisfy the second element by alleging that the deprivation was "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Griffith v. Breckenridge*, 403 U.S. 88, 102 (1971)).

To state a claim against a municipal entity for a constitutional violation, a plaintiff must show than an official's action that caused the plaintiff's injury was pursuant "to official municipal policy of some nature." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The Ninth Circuit has construed *Monell* to require that the plaintiff satisfy four elements: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. #40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (citation and internal quotation marks omitted).

## II. CLAIMS AGAINST THE CITY OF OAKLAND

Mr. Olajide alleges that the City of Oakland is responsible for unlawfully detaining him without probable cause, a warrant, or exigent circumstances, that it has a policy of unlawful detention, and that it conspired to subject him to a condition of peonage because he is African-American, in violation of the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments. Oakland moves to dismiss the Fifth, Sixth and Eighth Amendment claims, arguing that i) the Fifth Amendment only applies to actions against the Federal Government, ii) the Sixth Amendment is limited to government action after the initiation of adverse criminal proceedings, iii) the Eighth Amendment applies only to persons convicted of a crime. Oakland also argues that, to the extent that Mr. Olajide seeks punitive damages from Oakland, Oakland is exempt from liability for punitive damages as a public entity. Oakland does not seek to dismiss the First and Fourth Amendment allegations.

6

1    The Fifth, Sixth and Eighth Amendments do not apply to Mr. Olajide's claims, and

2   Oakland's motion to dismiss is GRANTED. "The Due Process Clause of the Fifth Amendment

3   and the equal protection component thereof apply only to actions of the federal government—not

4   to those of state or local governments." *Lee v. City of L.A.*, 250 F.3d 668, 687 (9th Cir. 2001)

5   (citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981)). Oakland and Alameda are local

6   governments, not federal agencies.[6] Mr. Olajide's arguments that the defendants are compensated

7   with federal paper and sued as federal United States persons does not mean the Fifth Amendment

8   applies to them.[7] Consequently, the Fifth Amendment does not apply and the Fifth Amendment

9   claims are DISMISSED WITH PREJUDICE.[8]

10    "The Sixth Amendment entitles a defendant to the assistance of counsel at every 'critical

11   stage' of a criminal prosecution." *United States v. Collins*, 430 F.3d 1260, 1264 (10th Cir. 2005)

12   (citing *Kirby v. Illinois,* 406 U.S. 682, 690 (1972)). "Because of its limited function and its

13   nonadversary character, the probable cause determination is not a 'critical stage' in the prosecution

14   that would require appointed counsel." *Gerstein v. Pugh*, 420 U.S. 103, 122, 95 S. Ct. 854, 867,

15   43 L. Ed. 2d 54 (1975). Likewise, there is no recognized Sixth Amendment right to counsel at a

16   bail hearing. *See, e.g.,* Charlie Gerstein, *Plea Bargaining and the Right to Counsel at Bail*

17   *Hearings*, 111 MICH. L. REV. 1513, 1516 (2013) ("[T]here is no federal right to appointed counsel

18   for indigent defendants at bail hearings.") (citing *Rothgery v. Gillespie Cnty.*, Tex., 554 U.S. 191,

19   214 (2008) (Alito, J., concurring)). Consequently, the Sixth Amendment does not apply and the

20

21

22   ────────────────

23   [6] I GRANT Oakland's request for judicial notice that "the City of Oakland is a local government
     not a federal agency." Oakland Mot. to Dismiss at. It is generally known and easily verifiable

24   that the City of Oakland is a local government, not an arm of the federal government.
     [7] Mr. Olajide requests that the Court take judicial notice of various documents, presumably in an

25   effort to show a link between Oakland and Alameda and the federal government. *See* Dkt. Nos.
     143, 144, 145, 152. The defendants do not object to Mr. Olajide's request. I GRANT Mr.

26   Olajide's requests for judicial notice because all of the documents are matters of public record.
     *See Shaw v. Hahn* 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). However, none of these documents

27   compel me to reach the particular conclusions that he draws from them.
     [8] The Fourteenth Amendment, not the Fifth Amendment, guarantees Mr. Olajide due process and

28   equal protection. *See Avery v. Midland Cnty., Tex.*, 390 U.S. 474, 480 (1968).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Sixth Amendment claims are DISMISSED WITH PREJUDICE.[9]

2            The Eighth Amendment prohibition of cruel and unusual punishment is "designed to

3    protect those convicted of crimes." *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986) (citation and

4    internal quotation marks omitted).  Mr. Olajide was not convicted of a crime.  Consequently, the

5    Eighth Amendment does not apply and the Eighth Amendment claims are DISMISSED WITH

6    PREJUDICE.

7            The First Amendment does not apply to Mr. Olajide's claims, either.  The First

8    Amendment prohibits Congress from "abridging the freedom of speech . . . the right of the people

9    peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. CONST.,

10   amend I.  Mr. Olajide alleges no facts that Oakland prevented the exercise of free speech,

11   assembly, or to petition the government.  Consequently, the First Amendment does not apply and

12   the First Amendment claims are DISMISSED WITH PREJUDICE.

13           Mr. Olajide's conclusory allegation that Oakland conspired to subject him to a condition of

14   peonage because he is African-American fails to state a claim under *Monell*.  To state a *Monell*

15   claim, a plaintiff must sufficiently allege "underlying facts to give fair notice and to enable the

16   opposing party to defend itself effectively, [and] must plausibly suggest an entitlement to relief,

17   such that it is not unfair to require the opposing party to be subjected to the expense of discovery

18   and continued litigation."  *AE ex rel. Hernandez v. City of Tulare*, 666 F.3d 631, 637 (9th Cir.

19   2012) (citation omitted).  Mr. Olajide's claim that Oakland conspired to subject him to a condition

20   of peonage does not provide sufficient underlying facts and given that the case has already been

21   pending for 18 months, this claim is DISMISSED WITH PREJUDICE.[10]

22           Mr. Olajide cannot state a claim against Oakland for punitive damages.  Local

23   governments are "immune from punitive damages under 42 U.S.C. [Section] 1983." *City of

24   Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Oakland is a local government.

25   Consequently, Mr. Olajide's claims for punitive damages against Oakland are DISMISSED WITH

26

27   [9] Mr. Olajide's allegations that Officer Arsanis "shackled and kidnapped" him (Opp. to Oakland
     Mot. to Dismiss at 2) are analyzed under the Fourth Amendment.

28   [10] As noted below, I grant Mr. Olajide leave to amend his allegation that Alameda subjected him
     to a condition of peonage.

1    PREJUDICE.

2          Mr. Olajide has adequately stated claims against Oakland for violations of the Fourth

3    Amendment concerning Officer Rowley's alleged "ratification" of Officer Arsanis' use of

4    excessive force.  *See* Sixth and Fifteenth Causes of Action; *see also* FAC ¶ 39.  A Section 1983

5    plaintiff states a claim under *Monell* where the plaintiff alleges that "an official with final policy-

6    making authority ratified a subordinate's unconstitutional decision or action and the basis for it."

7    *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations omitted).  Here, Mr.

8    Olajide's allegation that Officer Rowley ratified Officer Arsanis's conduct is sufficient to state a

9    claim under *Monell*. [11]

10   **III. CLAIMS AGAINST OFFICER ARSANIS**

11         Mr. Olajide alleges that Officer Arsanis arrested him without a warrant or probable cause,

12   used excessive force, and unlawfully detained him.  *See* First through Fourth Causes of Action.

13   Mr. Olajide also alleges that Officer Arsanis conspired with Officer Banks to unlawfully detain

14   Mr. Olajide, solely because Mr. Olajide is African-American.  *See* First Cause of Action.  Officer

15   Arsanis did not move to dismiss these allegations. [12]  Mr. Olajide's allegations sufficiently state

16   Section 1983 and 1985(3) violations of the Fourth Amendment.

17         The Fourth Amendment guarantees citizens the right "to be secure in their persons . . .

18   against unreasonable searches and seizures" of the person.  U.S. CONST., amend IV.  "[T]he

19   ultimate measure of the constitutionality of a governmental search is 'reasonableness.'"  *Maryland*

20   *v. King*, 133 S. Ct. 1958, 1969 (2013) (citation omitted).  An arrest and detention without probable

21   cause violates the Fourth Amendment.  *See Lee*, 250 F.3d at 665.  The use of excessive force

22   during an arrest also violates the Fourth Amendment.  *See Graham*, 490 U.S. at 388.  Mr.

23   Olajide's allegation that Officer Arsanis arrested him without probable cause and used excessive

24   force in the course of Mr. Olajide's arrest is sufficient to state claims for violations of the Fourth

25   ────────────────

26   [11] At the hearing on the motions to dismiss, Mr. Olajide stated Officer Rowley identified himself
     as a superior officer and had the "final say" on the scene.  Oakland did not dispute to Mr. Olajide's
27   characterization.
     [12] Aside from arguing that the Fifth, Sixth and Eighth Amendments do not apply to Mr. Olajide's
28   claims, as noted above.

9

United States District Court
Northern District of California

1    Amendment.  Mr. Olajide's allegation that Officer Arsanis conspired with Officer Banks

2    motivated by racial and discriminatory animus is sufficient to state a claim for a violation of

3    Section 1985(3).

4    **IV. CLAIMS AGAINST OFFICER BANKS**

5        Mr. Olajide alleges that Officer Banks arrested him without probable cause, that Officer

6    Banks did nothing to stop Officer Arsanis's use of excessive force, and that Officer Banks

7    conspired with Officer Arsanis, motived solely because Mr. Olajide is African-American.  *See*

8    First Cause of Action.  Officer Banks does not directly respond to these allegations.  For the

9    reasons stated above, these allegations are sufficient to state claims under Sections 1983 and

10   1985(3) for violations of the Fourth Amendment.

11   **V.  CLAIMS AGAINST OFFICER ROWLEY**

12       Mr. Olajide alleges that Officer Rowley ratified Officer Arsanis's use of force and

13   instructed unidentified actors to "kidnap Olajide neither without cause, consent, lawful warrant or

14   exigent circumstances."  *See* Sixth Cause of Action.  Officer Rowley does not directly respond to

15   this allegation.  These allegations are sufficient to state a claim under Section 1983 for violation of

16   the Fourth Amendment.

17   **VI. CLAIMS AGAINST THE COUNTY OF ALAMEDA**

18       Mr**.** Olajide alleges that the County of Alameda is responsible for detaining him without a

19   warrant, setting excessive bail, forcing him to be fingerprinted, forcibly taking his DNA, that it has

20   a custom or policy of unlawful detention, has a policy of setting excessive bail, conspired to

21   subject him to a condition of peonage because he is African-American, and kept him in a cage for

22   more than ten hours in violation of the Fourth, Fifth, Eighth and Fourteenth Amendments.  FAC ¶¶

23   51-57.  Mr. Olajide also alleges that unidentified Alameda officers choked and beat him, solely

24   because he is African-American.  FAC ¶ 19.

25       In its motion to dismiss, Alameda argues that i) Mr. Olajide's unlawful detention claim

26   fails because Alameda held Mr. Olajide pursuant to a facially valid court order; ii) the allegations

27   regarding the conditions of Mr. Olajide's confinement are "not sufficiently serious to state a

28   constitutional violation;" iii) the excessive bail claim fails because the bail was set by the

1    presiding judge, not Alameda; iv) there is no constitutional right to be free from fingerprinting; v)

2    Alameda obtained Mr. Olajide's DNA sample pursuant to mandatory California law, which has

3    been held constitutional; and vi) the peonage allegation does not state a constitutional violation or,

4    in the alternative, is insufficiently definite for Alameda to respond.  For the reasons stated below,

5    Alameda's motion is GRANTED IN PART.

6         "Prison officials charged with executing facially valid court orders enjoy absolute

7    immunity from [Section] 1983 liability for conduct prescribed by those orders."  *See*, *e.g.*

8    *Engebretson v. Mahoney*, 724 F.3d 1034, 1039 (9th Cir. 2013).  Here, Alameda and its officers are

9    entitled to immunity because they detained Mr. Olajide pursuant to a facially valid court order.[13]

10   Mr. Olajide's unlawful detention claims against Alameda also fail because his conclusory

11   allegation that Alameda has a custom or policy of unlawful detention is insufficient to state a

12   claim under *Monell*.  Mr. Olajide's bare allegation that he was unlawfully detained pursuant to an

13   Alameda custom or policy fails to state "underlying facts to give fair notice and enable to

14   [Alameda] to defend itself effectively," and does not "plausibly suggest an entitlement to relief."

15   *Hernandez*, 666 F.3d at 637.  Mr. Olajide's unlawful detention claims against Alameda are

16   therefore DISMISSED WITH PREJUDICE.

17        Mr. Olajide's excessive bail claim also fails.  An excessive bail claim requires showing

18   that bail was set for improper purposes or denied without a compelling reason and that bail was

19   "excessive" in violation of the Eighth Amendment.  *See Galen v. Cnty. of Los Angeles*, 477 F.3d

20

21   _____

     [13] I GRANT Alameda's request for judicial notice that Judge Grillo found probable cause (Dkt.
22   Nos. 142-2, 142-3) over Mr. Olajide's objection (Dkt. No. 151) because: i) Judge Grillo's
     Probable Cause Determination Order is a self-authenticating public document; ii) it is not a
23   "commercial agreement" between Oakland and Alameda; iii) the order is not invalid because it
     lacks the words "court" and "order" (CAL. PEN. CODE § 817); iv) the order is not invalid because it
24   was made on a Saturday (*see* CAL. PEN. CODE § 810) (requiring that a magistrate judge be
     available "at all times when a court is not in session"); v) because Mr. Olajide was arrested
25   without a warrant, there was no requirement that he be deposed or that the order "have similar
     wording" to the statutes cited by Mr. Olajide.  *See* Opp'n to Alameda Mot. to Dismiss 3-4 (citing
26   An Act to Regulate Proceedings in Criminal Cases, enacted in 1872, *amended by* Stats. 1959, c.
     2185, p. 5308, § 1; Stats. 1961, c. 1449, p. 3296, §§ 164, 167, 168, 169 (current versions at CAL.
27   PEN. CODE §§ 872(a), 875, 876, 877)).  Rather, the only requirement was that Mr. Olajide be taken
     before a magistrate "without unnecessary delay."  *See* CAL. PEN. CODE § 849(a); *see also Cnty. of
28   Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

     United States District Court
     Northern District of California

1   652, 659 (9th Cir. 2007).  Mr. Olajide's allegation that Alameda "knew or should have known"

2   that his bail amount of $55,000 was excessive is insufficient to state a claim that his bail was set

3   for improper purposes or "excessive."  *See* Eleventh Cause of Action.  Moreover, even if Mr.

4   Olajide's bail was excessive, his allegations are not sufficient to state a claim that Alameda caused

5   the alleged Eighth Amendment violation.  "California vests judicial officers with the exclusive

6   authority to enhance or reduce bail."  *Galen*, 477 F.3d at 663 (citing CAL. PEN. CODE § 1269c).

7   Law enforcement officials are liable under Section 1983 only if they "deliberately or reckless

8   misled the [judicial officer that set bail], and that [the plaintiff's] bail would not have been

9   unconstitutionally excessive but for the officers' misrepresentations."  *Id.* at 664.  Mr. Olajide's

10  conclusory allegation that Alameda has a custom or policy of setting excessive bail because

11  Alameda "knew or should have known" that his bail was excessive is insufficient to state a claim

12  under *Monell*.  *See Hernandez*, 666 F.3d at 637; *see also Plumeau*, 130 F.3d at 438.  Mr. Olajide's

13  excessive bail claims against Alameda are therefore DISMISSED WITH PREJUDICE.

14          The Supreme Court allows law enforcement to collect DNA from persons arrested for

15  crimes of violence.  *See King*, 133 S. Ct. at 1967.  The Probable Cause Determination Order

16  indicated that Mr. Olajide was arrested for resisting and obstructing a peace officer and battery on

17  a peace officer.  *See* Dkt. 142-3; *see also* CAL. PEN. CODE §§ 148(a); 243(b).  Mr. Olajide's Fourth

18  Amendment rights were therefore not violated when Alameda took a sample of his DNA.  Mr.

19  Olajide's allegations that Alameda violated his Fourth Amendment rights when it collected a

20  sample of his DNA are therefore DISMISSED WITH PREJUDICE.  For the same reason, Mr.

21  Olajide's claims that an Alameda policy authorizing the collection of his DNA caused a violation

22  of his Fourth Amendment rights are DISMISSED WITH PREJUDICE.

23          Mr. Olajide's claim that Alameda kept him in a "cage" for ten hours without food or water

24  fails to state a claim under Section 1983.  Treatment of a pretrial detainee is evaluated under the

25  Eighth Amendment's standard for cruel and unusual punishment.  *See Simmons v. Navajo Cnty.,*

26  *Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010); *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996).

27  Generally, the Eighth Amendment prohibits punishment "inconsistent with contemporary

28  standards of decency" and "repugnant to the conscience of mankind[.]"  *Whitley v. Albers*, 475

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1    U.S. 312, 327 (1986).  However, the Eighth Amendment permits minimal uses of force, *Hudson v.*

2    *McMillan*, 503 U.S. 1, 9-10 (1992), and law enforcement may take reasonable measures to ensure

3    a pretrial detainee remains detained.  *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).  Mr. Olajide's

4    confinement in a cell for ten hours, allegedly without food or water, is not serious enough to state

5    a violation under Eighth Amendment standards.  His claims that Alameda violated his Fourteenth

6    Amendment due process rights are DISMISSED WITH PREJUDICE.

7           Alameda has not moved to dismiss the claims stemming from the allegations that

8    unidentified Alameda deputies choked, beat, and yelled racial slurs at Mr. Olajide.  *See* FAC ¶ 19;

9    Tenth Cause of Action.  Although pretrial detainees are protected by the Due Process Clause of

10   the Fourteenth Amendment, allegations of the use of excessive force on a pretrial detainee are

11   evaluated under Fourth Amendment standards.  *See Graham*, 490 U.S. at 394.  Mr. Olajide's

12   allegations that he was beaten and choked are sufficient to state a claim that unidentified Alameda

13   deputies violated his Fourteenth Amendment rights in violation of Section 1983.  Mr. Olajide's

14   allegation that unidentified Alameda deputies conspired and were motivated by racial and

15   discriminatory animus is sufficient to state a claim for a violation of Section 1983(5).

16          As I noted at the hearing, the use of unidentified "John Doe" defendants is generally

17   disfavored.  *See, e.g., Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  To the extent that

18   Mr. Olajide intends to assert causes of action against these individual Alameda deputies, he must

19   identify them in an amended complaint by April 30, 2014.

20          For the reasons stated above with respect to the City of Oakland, Mr. Olajide's allegation

21   that Alameda conspired to subject him to a condition of peonage because he is African-American

22   fails to state a claim under *Monell* because he does not allege that his constitutional injury was

23   pursuant "to official municipal policy of some nature."  *Monell*, 436 U.S. at 663; *see also*

24   *Plumeau*, 130 F.3d at 438.[14]  However, because I am granting Mr. Olajide leave to amend his

25   complaint to identify the unidentified Alameda deputies, Mr. Olajide is GRANTED LEAVE to

26

27   [14] Alameda also moves for a more definite statement.  Alameda Mot. to Dismiss 12.  Because I
     conclude that Mr. Olajide has failed to state a claim under *Monell*, Alameda's request for a more

28   definite statement is DENIED AS MOOT.

1    amend his claim that Alameda conspired to subject him to a condition of peonage.  Mr. Olajide's

2    claim that Alameda conspired to subject him to a condition of peonage is therefore DISMISSED

3    WITHOUT PREJUDICE.

4         Mr. Olajide's allegation in the fourteenth cause of action that Alameda ratified and failed

5    to investigate and discipline its employees for their allegedly unconstitutional conduct fails to state

6    a claim under *Monell*.  *See* FAC ¶¶ 37, 39.  Mr. Olajide has identified no policy or custom in

7    connection with this allegation that caused him the deprivation of a constitutional right.  Mr.

8    Olajide's claim that Alameda ratified and failed to investigate its employees' conduct is also

9    DISMISSED WITHOUT PREJUDICE.

10   **VII.   CLAIMS AGAINST DEPUTY COURTNEY**

11        Mr. Olajide alleges that Deputy Courtney unlawfully detained him without probable cause

12   or a warrant, forced him to provide his fingerprints under "duress, threat and coercion" (FAC ¶

13   25), and verbally threatened him.  *See* Twelfth Cause of Action.  Deputy Courtney argues that she

14   is entitled to qualified immunity for the unlawful detention allegation because Mr. Olajide was

15   held pursuant to a valid court order.  *See* Alameda Mot. to Dismiss 10.  Deputy Courtney also

16   argues that the fingerprinting claim fails as arrestees have no constitutional right to be free from

17   fingerprinting.  *Id.* at 9-10.

18        Deputy Courtney's motion to dismiss is GRANTED.  First, as noted above, Mr. Olajide

19   was held pursuant to a valid court order.  Consequently, Deputy Courtney cannot be held liable for

20   Mr. Olajide's allegedly unlawful detention.  Second, the Fourth Amendment "allows police to take

21   certain routine administrative steps incident to arrest, [including] booking, photographing, and

22   fingerprinting."  *King*, 133 S. Ct. at 1977.  As an arrestee does not have a constitutional right to be

23   free from fingerprinting, Deputy Courtney's alleged conduct does not give rise to a constitutional

24   violation.  In addition, a threat to violate an individual's constitutional rights is insufficient to state

25   a claim under Section 1983.  *See Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (plaintiff's

26   allegation that he was "threatened with bodily harm" by the defendants "to convince him to refrain

27   from pursuing legal redress" failed to state a claim under Section 1983).  Mr. Olajide's allegation

28   that Deputy Courtney threatened to arrest him for "assault on an officer" therefore does not give

United States District Court
Northern District of California

rise to a constitutional violation of Mr. Olajide's Fourth Amendment rights.  The claims against Deputy Courtney are DISMISSED WITH PREJUDICE.

## VIII.   INJUNCTIVE RELIEF

Mr. Olajide requests injunctive relief enjoining the defendants from continuing to engage in their allegedly unconstitutional behavior.  FAC at 16.  Article III of the United States Constitution allows federal courts to decide only actual controversies.  *See City of L.A. v. Lyons*, 461 U.S. 95, 106 (1983).  Whether Mr. Olajide has standing to seek an injunction depends on whether he is likely to suffer future injury from the allegedly unconstitutional behavior of the defendants.  *Id.*  An allegation that Alameda and Oakland might treat Mr. Olajide the same way if he had another encounter with them is insufficient under *Lyons*, 461 U.S. at 102 ("the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical'").  Accordingly, Mr. Olajide's request for injunctive relief is DENIED.

**CONCLUSION**

Oakland's motion to dismiss is GRANTED.  Mr. Olajide's First, Fifth, Sixth, and Eighth Amendment claims are DISMISSED WITH PREJUDICE.

Alameda's and Deputy Courtney's motion to dismiss is GRANTED and Deputy Courtney is DISMISSED from this action.  Mr. Olajide's eighth, ninth, tenth,[15] eleventh, twelfth, thirteenth, and sixteenth causes of action are DISMISSED WITH PREJUDICE.  Mr. Olajide's claims that Alameda conspired to subject him to a condition of peonage and, in the fourteenth cause of action, that it ratified and failed to investigate and discipline its employees for their allegedly unconstitutional conduct, are DISMISSED WITHOUT PREJUDICE.

The remaining claims are: (1) that Officers Arsanis and Banks arrested Mr. Olajide without probable cause in violation of the Fourth Amendment; (2) that Officer Arsanis used excessive force in violation of the Fourth Amendment; (3) that Officers Arsanis and Banks conspired and were motivated by discriminatory and racial animus in violation of Section 1985(3), and; (4) that Oakland is liable under *Monell* because Officer Rowley, as a supervisor, ratified Officer Arsanis'

---

[15] As noted above, the tenth cause of action is not dismissed with respect to the allegations that unidentified Alameda deputies choked, beat, and yelled racial slurs at Mr. Olajide.

United States District Court
Northern District of California

unconstitutional conduct.

To the extent that Mr. Olajide intends to assert causes of action against the unidentified Alameda deputies that allegedly choked and beat him in violation of the Fourteenth Amendment, he must identify those deputies in an amended complaint.  Any new allegations in an amended complaint must be limited to identifying those Alameda deputies and to amending the claim that that Alameda conspired to subject him to a condition of peonage and/or ratified and failed to investigate and discipline its employees for their allegedly unconstitutional conduct ; other factual additions or additional causes of action may not be asserted without leave from the Court.  **Any amended complaint must be filed by April 30, 2014.**

**IT IS SO ORDERED**.

Dated: March 7, 2014

_____
WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California

16